IN THE UNITED STATES DISTRICT
COURT MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROGER LEE OWENS,  )   CASE NO:
Attorney for Self  )   3:23-cv-260-TJC-MCR
)
)
)
     Plaintiff  )
)
v.  )
)   **JURY DEMANDED**
CONGLOBAL INDUSTRIES, LLC  )
A.K.A. (ITS CONGLOBAL)  )
)
)
)
     Defendant  )

FILED 2023 MAR -8 PM 3:19 CLERK, US DISTRICT COURT MIDDLE DISTRICT OF FL JACKSONVILLE FLORIDA

**VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL**
**AUTH. FED. R. CIV. P. 38 (A) (B)**

Plaintiff Roger Lee Owens, representing himself in pursuant to 28 U.S.C. 1654 sues Defendant Conglobal Industries LLC and alleges:

### JURISDICTION

1. Plaintiff claims federal jurisdiction pursuant to Article III §2 which extends the jurisdiction to cases arising under the U.S. Constitution and pursuant to 28 U.S.C. § 1331.

2. This claim exceeds fifty thousand ($50,000.00).

3. Plaintiff brings this discrimination suit authorized and instituted pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981").

4. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §§

1391(b)(1) and 1391(c) because Defendant is subjected to personal jurisdiction, and reside in Florida.

## PARTIES

5. Plaintiff Roger Lee Owens is an Honorably discharged African American, disabled veteran and natural person residing at 11416 Lumberjack Circle East, Jacksonville FL, 32223. See Exhibit C

6. At all time material to this action, defendant Conglobal Industries, LLC is a business that is authorized to do business in the state of Florida who's address is 8831 Moncrief Dinsmore Rd, Jacksonville, FL 32219.

## CAUSE OF ACTION

7. On January 11, 2023, I received a Personal Improvement Plan attached as *exhibit A*, which stated that the primary responsibility of my position is to manage the Terminal (TraPac) and the Depot (Located on Alta Dr.).

8. The document also stated that I did not reach ITS Conglobal expectation regarding my role as a Depot Manager.

9. Both locations have supervisors and as a Depot Manager, my job is to manage the Depot, but they charged me with having a role as a General Manager for which I have not received a title but held at the same standard.

10. I've searched the entire company's organization chart data base and found no other Depot manager that leads more than one location.

11. The Personal Improvement Plan listed four points of improvement:
    1. Mechanics Production for 2022
    2. EBITDA (profit) for 2022
    3. Project Management
    4. Safety

12. In order to address the first point of improvement, the defendant states that in 2022, the mechanic production was at 90%. This was said to be well below average.

13. Unfortunately, in 2022, 10 mechanics were laid off, leaving 11 mechanics remaining, including 1 mechanic that was on light duty due to an injury, which lead to 0% in productivity.

14. With the loss of 10 mechanics, there was also a loss in revenue and profit, which was not considered.

15. The second point of improvement addressed the loss of profit in 2022, which was –$192,000.

16. Within the loss of profit, the break down is as follows:
    - There was $91,000 in equipment repairs
    - $100,000 more from the previous year in leases/rentals
    - $10,000 more from the previous year in utilities
    - $20,000 more from the previous year in property fees and taxes
    - $139,000 in salaries for 5 additional company employees that were transferred to my location after the loss of a contract at the Railyard.

17. I was informed that the transfer of new personnel was to help prepare my location for an increase of business in the days to come.

18. All of the additional expenses and employees' salaries were not considered in my evaluation and the loss of profit was not due to my lack of performance.

19. The third area of improvement included project management, which stated that the current electricity installation went well over expected time of completion and that there was a lack of urgency on my behalf in order to promote finishing the project and moving on to future projects.

20. The project that is mentioned within the Improvement plan was initiated by my

boss and passed down to me approximately 3 months into the project. There were setbacks from this point, including changes to site plans, waiting on poles to be delivered, snagging of cable while the electricians were trenching, changing of the location of the new office, and not having a permit before the arrival of the new office, which caused further delay. I did not make the original order, nor did I change the site plans, but rather followed the instructions that were given to me.

21. The fourth and last issued addressed in my improvement plan was safety, which stated, "On a recent visit from the Director of Sale, he observed that there were zero employees wearing safety vest, including the supervisor on site."
22. During this safety inspection, I was on emergency leave to attend the funeral of my sister, but held responsible for the action of the onsite supervisor and every mechanic.
23. The goals, objectives and actions required of me within their improvement plan is not obtainable due to the fact that, it didn't arise out of negligence on my behalf, but rather pinned on me as a "fall guy" for the companies own shortcomings.
24. I was told that I was the last one from the older crew to be reviewed. There were 3 employees laid off mid-year of 2021 (2 managers and 1 administrator). This was said to be done due to the decrease in the workflow. All three employees are minorities.
25. There were 5 employees transferred to my location and put on payroll mid 2022 in order to be ready for an increase in business in the days to come. The employees that were transferred to my location were not minorities.

26. Although the company is expecting an increase in business, none of the minorities who were laid off, received an opportunity to get their positions back and now I'm being targeted.

27. One recent example is that this company has always promoted from within, yet I have never been given the same opportunities as my predecessor's, nor have I've been afforded with the same level of compensation for the amount of responsibilities that were placed on me.

28. On January 16, 2023, the company hired a person outside of the company, with no experience in our industry, in order to replace an employee that held the Assistant General Manager's position. I wasn't offered this position, nor given the opportunity to apply for it as my predecessor would have been given in the past. See Exhibit B.

### Disparate Treatment

29. The essence of disparate treatment is different treatment. Disparate treatment is unlawful under 42 U.S.C. § 1981.

30. In an individual disparate treatment case, the central question is always whether the defendant's actions were motivated by discriminatory intent. The plaintiff may prove the defendant's discriminatory intent by either direct or circumstantial evidence.

31. Circumstantial evidence does not directly prove a fact of consequence to the determination of the action; rather, it permits the factfinder to infer the existence of such a fact. Thus, if the plaintiff offers records showing that discrimination is inferred through the defendant's actions, then those records provide circumstantial evidence that may permit the plaintiff to move forward with his suit. *See Goetz v.*

*Farm Credit Serv. 927 F.2d 398, 400, 55 FEP 462 (8th Cir. 1991); Haglof v. Northwest Rehabilitation, INC., 910 F.2d 492, 493, 54 FEP 1211 (8th Cir. 1990).*

32. The allocation of proof in such cases first was articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, later refined in *Texas Department of Community Affairs v. Burdine, and restated in St. Mary's Honor Center v. Hicks:*

    (1) The plaintiff first must establish a prima facie case of discrimination;
    (2) The employer must respond with a legitimate, nondiscriminatory reason for its actions; and
    (3) In order to prevail, the plaintiff must establish that the employer's articulated legitimate, nondiscriminatory reason was a pretext to mask unlawful discrimination.

33. Also, the EEOC cause of determination is not a jurisdictional prerequisite to a Claim brought under Civil Rights Act of 1866, 42 U.S.C. § 1981.

34. The plaintiff has always been grateful for the opportunity to manage at this company and has shown is gratitude by bringing the company out of a 6 figure deficit and into profit within his second year of managing.

35. The plaintiff went on to increase the profit of the company year after year, until Covid-19 came and swept the world by storm. Even still, the plaintiff still performed as his previous years, but could not overcome the baggage of extra employees being added to his payroll, along with 10 mechanics being laid off and not enough increase in business. Yet, he was penalized for this.

36. The plaintiff is an Honorably Discharged Disabled Veteran, who is a minority and apart of a protected class. He is the last minority manager left at the company's local site.

### The Employer's Burden of Producing Evidence

37. Once the plaintiff creates an inference of discrimination by setting forth a prima facie case, the burden shifts to the employer to articulate, through the introduction of admissible evidence, a "legitimate, nondiscriminatory reason" for the adverse action in order to rebut the inference of discrimination.

38. Therefore, there is ample evidence to infer that the defendant did discriminate against the plaintiff within the Improvement Plan and has threatened to terminate the plaintiff if he doesn't perform to the companies expectation, which is unrealistic, being as though the plaintiff is not fully responsible for the issues stated within the actual Improvement Plan and the plaintiff has ample evidence showing that he has achieve exceptional production numbers year after year without any true acknowledgement or recognition. Now the company wants him to take the fall for a downside economy due to COVID-19.

### **RELIEF**

**WHEREFORE**, Plaintiff Roger Lee Owens do hereby request for the following relief:

A. Damages against Conglobal Industries, LLC, for mental and emotional distress, embarrassment and humiliation, loss of professional reputation, loss of enjoyment of life, loss of pride, and other pecuniary in the amount of Ten Million dollars ($10,000,000.00).

B. Also Ten Million Dollars ($10,000,000.00) for punitive Damage.

C. An Order directing Defendants to adjust the wage rates and benefits for the Plaintiff to the level that they would be enjoying but for the Defendant's

discriminatory polices, practices and/or procedures;

D. An award of back pay, front pay, lost benefits, preferential rights to jobs and other damages for lost compensation and job benefits suffered by the Plaintiff to be determined at trial;

E. Pre-Judgment interest;

F. Such other and further relief as the Court may deem just and proper;

G. The plaintiff request for an immediate temporary injunction against Conglobal Industries, LLC to prevent them from firing him and taking any adverse action against him without going through the court system in this instant case and demand a jury trial of his peers. *Auth. Fed. R. Civ. P. 38 (A)(B).*

H. Retention of jurisdiction by the Court until such time as the Court is satisfied that the Defendants have remedied the practices complained of herein and are determined to be in full compliance with the law.

Respectfully Submitted,

Roger Lee Owens
11416 Lumberjack Circle East
Jacksonville, FL 32223
(904) 345-1708

**STATEMENT OF VERIFICATION**

I have read the above complaint and it is correct to the best of my knowledge.

*[signature]*